06-15-00111-CR

RECEIVED IN
The Court of Appeals
Sixth District

JUL 0 6 2015

Texarkana, Texas
Debra Autrey, Clerk

Court of Appeals

Sixth Court of Appeals

Bi-State Justice Bldg.

100 N. State Line Ave. #20

Texarkana, Texas 75501

June 30, 2015

FILED IN
The Court of Appeals
Sixth District

JUL 0 6 2015

Texarkana, Texas
Debra K. Autrey, Clerk

Leave to File

Writ of Mandamus

Mark Eugene Engle

v.

The State of Texas

Trial Case Number 29110

Honorable Judge Beacom

In The 354th District Court

Parties:

In Re Mark Eugene Engle
#1958430 Pro-Se
Connally Unit
899 F.M. 632
Kenedy, TX 78119
Realator

Judge Beacom
of The 354th
District Court

Greenville, Texas

(I)

# Table of Contents

Identity of Parties                                          I

Table of Contents                                           II

Index of Authorities                                        III

Statement of The Case                                       IV

Issue Presented with Argument                                V

Petition should be Granted because Realator

has demonstrated that his motion has been

filed or brought to the attention of the

Trial Court; or on the alternative is it an

Abuse of Discretion for the Trial Judge

not to Rule on a timely filed motion.

Conclusion and Prayer                                       VI

Certificate of Service                                      VI

Appendix                                                   VII

Appendix Contents                                     VIII-IX

Index of Authorities

Canadian Helicopter Ltd. v. Witting, 876                                  V

S.W.2d.304,305 (Texas 1994)

Johnson v. Fourth COurt of Appeals, 700                                   V

S.W.2d.916,917 (Texas 1985)

Stoner v. Massey, 586 S.W.2d.843,846                                      V

(Texas 1979)

In re Villareal, 96 S.W.3d.708,710-711                                    V

(Texas-App-Amarillo 2003)

## Statement of The Case

On January 20th 2015 Realator sent a motion to add additional Designation of Records Issue to Judge Beacom that would prove Realator's "Actual Innocence" in regards to the InValid Search Warrant and Orders from the Examining Trial. On February 9th 2015, Relator sent a Motion to Return Property seized with Invalid Search Warrant. On April 20th 2015, Realator sent by Certified Mail a Motion for Order to Show Cause and Motion to Dismiss with Prejudice for a Pure 4th Amendment Violation of the Particularity Clause. The Honorable Judge has a duty to rule on a timely filed motion which is Judicial and Ministerial Act. It is an Abuse of Discretion not to Act.

## Issue Presented

Is it an Abuse of Discretion for the Judge not to Rule on a timely filed Motion?

## Facts

On January 20th 2015, Realator sent a motion for Additional-designation to prove his Actual Innocence on an Invalid Search Warrant and Orders from the Examining Trial. On March 9th 2015, he sent a motion Designation of Record on a Incomplete Record. On April 20th 2015, he sent a motion to SHow Cause, to the Judge and a motion to Dismiss with Prejudice by Certified Mail.

## Arguments

Standard of Review

Mandamus is an extraordinary remedy, available only in limited circumstances. Canadian Helicopter Ltd. v. Witting, 876 S.W.2d.304,305 (Texas 1994)

It is the Burden of the Realator to show entitlement to the relief being requested. See: generally Johnson v. Fourth Court of Appeals, 700 S.W.2d 916,917 (Texas 1985), (original proceeding). In order to be entitled to relief, the realator must show the following:

(1) A legal duty to perform;

(2) A demand for performance; and

(3) A refusal to act.

See: Stoner v. Massey, 586 S.W.2d.843,846 (texas 1979).

With the Facts presented Realator has shown that all motions are over (30) days, and there is Genuine need for the Material issues requested from the Trial Court by Realator.

Realator's Petition should be Granted because Realator has demonstrated that his motion has been filed or brought to the attention of the Trial COurt.

The Burden is on the Realator to show that the District Court knew of its duty to act and neglected to perform it. See: In re Villareal, 96 S.W.3d.708,710-711 (Texas.App. Amarillo 2003). Realator has meet his Burden he is entitled to relief. See: Stoner v. Massey, 586 S.W.2d. At 846.

(V)

It is in the power of this Honorable Court of Competent jurisdiction to compel the Trial Court which retains plenary power to act in the interest of justice.

## Conclusion and Prayer

Realator's petition should be Granted, he has demonstrated that the Trial COurt has failed to act.

Wherefore, premises considered, realator prays the COurt Grants Realator's leave to file Writ of Mandamus.

Respectfully Submitted,

Mark Eugene Engle

## Certificate of Service

On this day the 30th of June 2015, Realator sent this leave to file Mandamus to the 6th Court of Appeals of Texarkana Texas Clerk Debbie Autrey from the Connally Unit 899 F.M. 632 Kenedy, Texas 78119 by mail.

Sincerly,

Mark Eugene Engle

(VI)

Appendix
With
Exhibits

# Appendix Contents

## Exhibit A

Motions were filed for Examining Trial pursuant to Chapter 16 Texas Code of Criminal Procedure Article 16.01. January 17th 2013.

## Exhibit B

Reporters Record for Examining Trial dated Febuary 4th 2013. Article 16.07 same rules of Evidence as on Final Trial.

## Exhibit C

Orders from the Examining Trial Dated April 8th 2013. Article 16.17 Decision of Judge . The Judge had 48 hours to make and enter the orders after the trial or by Operation of Law it would be NO Probable Cause and the accused Shall Be Discharged. Violation of the Writ. Hearings under Writ #07259 need to be submitted to this Honorable Court for Appellate Review.

## Exhibit D

All DNA analysis came back negative. Proof positive lies contained in the Affadavit for Search Warrant (RRvol.22 Joint Exhibit 1) which was sealed at the time the warrant was served as read on page 5 of the Affadavit for Search Warrant.

## Exhibit E

A case history of Jane Doe revealing a Warrant for her arrest to suggest entrapment for immunity even though the Search Warrant (RRvol.22 Joint Exhibit2) is facially invalid. That is why Jane Doe Refused to be part of the State's Conspiracy.

## Exhibit F

Correspondance from Judge Beacom showing Bias and Abuse of Discretion when the historical facts of the case are contrary to his decision. He ruled on Supression without a hearing on August 7th 2014.

## Exhibit G

Order on Motion to Suppress a Mock hearing was had with an irrelavant argument as a means to justify the Judge signing a decision that was made a month prior to the hearing.

Exhibit H

Dismissal of the Controlling Case- the Specific offense for which the Arrest Warrant, Search Warrant and Affadavit for Search Warrant all were based. (The maxim of the law is.... that it is better that ninety-nine.... offenders should escape than one innocent man should be condemned")Newman, Beyond "Reasonable Doubt"(1993)

Exhibit I

Green Card Certified Receipt from my previous Mandamus. To show mailing and filing.

Exhibit J

Show Cause Motion filed with the trial court. An accelerated method of beginning a litigation by compelling the adverse party to respond in a much shorter period of time than he or she would normally have to respond to a complaint. In this case to prove realator's guilty plea was not made knowingly or voluntarily.

Exhibit K

Motion to Dismiss with Prejudice filed with the trial court in an attempt to exhaust all remedies by allowing the trial court to use Texas Code of Criminal Procedure Article 32.02 to correct systemic and Constitutional errors by dismissing the prosecution. If denied then I can address the issue to this Honorable Court in Appellate Procedure.

Exhibit L

Unsworn Declaration.

Exhibit "A"

Motion

For

Examining Trial

| STATE OF TEXAS | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| vs. | § | 354th JUDICIAL DISTRICT |
| | § | |
| MARK ENGLE | § | HUNT COUNTY, TEXAS |

## MOTION FOR EXAMINING TRIAL

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now comes MARK ENGLE, Defendant, by and through undersigned counsel, and respectfully requests that this Court hear an examining trial pursuant to Chapter 16 of the Texas Code of Criminal Procedure, and in support thereof shows the following:

1.    MARK ENGLE is presently incarcerated in the HUNT County Jail charged by complaint with the felony offense of SEXUAL ASSAULT is unable to make bond at the present time and has not yet been indicted in this case.

2.    MARK ENGLE requests an examining trial "to examine into the truth of the accusation made", as required by Article 16.01 of the Texas Code of Criminal Procedure.

**WHEREFORE, PREMISES CONSIDERED,** MARK ENGLE prays that the Court grant this Motion For Examining Trial.

Respectfully submitted,
Carol Day Gustin
2611 Lee Street
P.O. Box 1053
Greenville, Texas 75403

By:_____
Carol Day Gustin
State Bar No. 24004313
Attorney for MARK ENGLE



## CERTIFICATE OF SERVICE

This is to certify that on January 17, 2013, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Hunt County, Texas, by hand delivery.

_____
Carol Day Gustin

WRIT NO. 07259 (Sexual Assault)

| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | 354th JUDICIAL DISTRICT |
| | § | |
| MARK ENGLE | § | HUNT COUNTY, TEXAS |

## O R D E R

On _____, 2013, came on to be considered MARK ENGLE's Motion for

Examining Trial, and said motion is hereby

(Granted) (Denied)

_____
JUDGE PRESIDING

| STATE OF TEXAS | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| vs. | § | 354th JUDICIAL DISTRICT |
| | § | |
| MARK ENGLE | § | HUNT COUNTY, TEXAS |

## MOTION FOR EXAMINING TRIAL

### TO THE HONORABLE JUDGE OF SAID COURT:

Now comes MARK ENGLE, Defendant, by and through undersigned counsel, and respectfully requests that this Court hear an examining trial pursuant to Chapter 16 of the Texas Code of Criminal Procedure, and in support thereof shows the following:

1. MARK ENGLE is presently incarcerated in the HUNT County Jail charged by complaint with the felony offense of MANUFACTURE DELIVERY OF A CONTROLLED SUBSTANCE 200gm or more but less than 400gm. MARK ENGLE is unable to make bond at the present time and has not yet been indicted in this case.

2. MARK ENGLE requests an examining trial "to examine into the truth of the accusation made", as required by Article 16.01 of the Texas Code of Criminal Procedure.

**WHEREFORE, PREMISES CONSIDERED,** MARK ENGLE prays that the Court grant this Motion For Examining Trial.

Respectfully submitted,
Carol Day Gustin
2611 Lee Street
P.O. Box 1053
Greenville, Texas 75403

By: _____

Carol Day Gustin
State Bar No. 24004313
Attorney for MARK ENGLE

DUPLICATE

## CERTIFICATE OF SERVICE

This is to certify that on January 17, 2013, a true and correct copy of the above and foregoing document was served on the District Attorney's Office, Hunt County, Texas, by hand delivery.

_____
Carol Day Gustin

## NO. 07259 (MAN DEL C/S < 400gm)

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | 354th JUDICIAL DISTRICT |
| | § | |
| MARK ENGLE | § | HUNT COUNTY, TEXAS |

## ORDER

On _____, 2013, came on to be considered MARK ENGLE's Motion for Examining Trial, and said motion is hereby

(Granted) (Denied)

_____
JUDGE PRESIDING

Exhibit "B"


Reporter's Record

for

Examining Trial

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT WRIT NO. 07259

THE STATE OF TEXAS      *      IN THE DISTRICT COURT OF

                       *

VS                         *      HUNT COUNTY TEXAS

                       *

MARK EUGENE ENGLE      *      354TH JUDICIAL DISTRICT


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
EXAMINING TRIAL
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


NOBLE WALKER
HUNT COUNTY DISTRICT ATTORNEY
P.O. BOX 1097
GREENVILLE, TEXAS 75403
(903) 408-4190
(903) 408-4296 FAX
STATE BAR NO. 24046293
     By: Steve Lilley
     ATTORNEY FOR THE STATE OF TEXAS



LAW OFFICE OF CAROL GUSTIN
P.O. BOX 1053
GREENVILLE, TX. 75403
(903)455-9888
STATE BAR NO. 24004313
     By: Carol Gustin
     ATTORNEY FOR THE DEFENDANT


On the 4th day of February 2013 the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Richard Beacom, Judge presiding, held in Greenville, Hunt County, Texas:

Proceedings reported by oral stenography.

CHRONOLOGICAL INDEX

|                    |     |    |       |       |       | Page |
|--------------------|-----|----|-------|-------|-------|------|
| Case called        |     |    |       |       |       | 3    |
| Witness sworn      |     |    |       |       |       | 4    |

| WITNESS        | DIR | VD | CROSS | REDIR | RECRO |
|----------------|-----|----|-------|-------|-------|
| Walden, Steve  | 4   |    | 12    |       |       |

|                       | Page |
|-----------------------|------|
| State's closing       | 21   |
| Defendant's closing   | 22   |
| Court's ruling        | 22   |
| Hearing concluded     | 22   |

MICHAEL HURLEY, CSR
1330 MACKIE DR.
RICHARDSON, TX 75081
214-226-2547

** PROCEEDINGS

THE COURT: In writ 7259, State of Texas versus Mark Engle.

MS. GUSTIN: I think we're still waiting for Mr. Engle to be brought over from the jail. I did talk to - Big John says that it's in the works.

THE COURT: Okay.

THE JAILER: He's on his way, Judge.

(A break was held.)

THE COURT: All right. Did we ever get Mr. Engle over?

MS. GUSTIN: We - we did, Your Honor. He's here.

THE COURT: All right. Writ 7259, State of Texas versus Mark Eugene Engle. All right. This is set for an examining trial.

THE STATE: Yes, Your Honor.

THE COURT: Does the State have some witnesses?

THE STATE: We have witnesses on one of the two arrests, Your Honor. That will be for the possession of a controlled substance case.

THE COURT: Okay. And are we ready to proceed on that?

THE STATE: Yes, Your Honor.

THE COURT: All right. Bring them up. Let's get them sworn. If you'll raise your right hand, please.

(The witness were sworn by the court.)

THE COURT: All right. Mr. Lilley.

STEVEN WAYNE WALDEN,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. LILLEY

Q.    Sir, could you give us your full - your full name and what your job title is and where you work, for the court?

A.    Steven Wayne Walden.  I work for the Greenville Police Department.  I'm a sergeant in the criminal investigation division.

Q.    How long have you worked for the Greenville Police Department?

A.    A little over 21 years.

Q.    Have you - were you involved in an investigation involving the defendant, Mark Engle?

A.    Yes, I was.

Q.    Can you identify him as the person that you arrested and what night that was?

A.    December 7th.  The gentleman sitting next to Ms. Gustin.

Q.    And can you tell me what he was arrested for, on the - on that date?

A.    We were investigating a sexual assault and the arrest was made for sexual assault and possession, with intent to deliver - manufacture and deliver.

Q.    All right.  Now was he arrested at his home, at another

location, or in his vehicle? Can you describe where he was arrested?

A. He was arrested out of his vehicle, along the service road of the interstate, in Greenville, Texas.

Q. And where did you first believe that he was that day?

A. At Motel 6, in Greenville, Texas, room 123.

Q. All right. What brought you to the Motel 6 room that evening?

A. I was dispatched from the police department, seeing a distraught female out front. Went out and contacted her and she explained that she had been sexually assaulted. An investigation led to the identity of a gentleman named Mark, at Motel 6, room 123.

Q. What did you end up - what did you and in cooperation with other people in the Greenville Police Department do with that information then?

A. We had the female go to the hospital, with an advocate and then myself and an investigator went and set up surveillance at Motel 6.

Q. And what happened after that?

A. There was a white Saturn that was described by the victim, Jane Doe, that she was assaulted in. Pulled up into the area of room 123 and a white male matching the description of Mark Engle got out and went into room 123.

Q. What did y'all do after that?

A.    Confirmed the license plate on the vehicle was registered to Mark Engle.  We also confirmed that the identity of the person that was in room 123, that rented the room, was Mark Engle from Watauga.

Q.    And did you ever go in to arrest or search either the room 123 or that white Saturn?

A.    Yes, we did.

Q.    And did you get a search warrant for that?

A.    Yes, we did.

Q.    And after the search warrant was signed, what did y'all do?

A.    We executed a search of room 123.  Then went back to the police station where the white Saturn was impounded and completed the search of that vehicle, as well.

Q.    Where was the defendant when - okay.  So the search was conducted of room 123.

A.    Yes.

Q.    Were you involved in that?

A.    Yes.

Q.    And the search was - the vehicle was impounded on the frontage road of the interstate?

A.    Yes.  From the arrest.

Q.    So was the defendant in the room when you got there or how did that work?

A.    No.  He was actually at the police station, under

arrest on a traffic charge.

Q.    Under arrest on traffic charges.

A.    Yes.

Q.    So were you part of the – the original – were you part of the traffic arrest?

A.    Yes.

Q.    You were a part of that as well?

A.    Yes.

Q.    And he was taken into custody, I take it.

A.    Yes.

Q.    And his car was – was his car part of the search warrant as well?

A.    Yes.  It was listed in the search warrant.

Q.    The car and its contents.

A.    Yes.

Q.    Can you tell us what was found, if anything, of note here today, inside the vehicle?

A.    There was a locked case inside the backseat of the vehicle.  And during the initial report, it was indicated that Mr. Engle had used narcotics during the sexual assault and that needles were used, where a victim and himself were shot up with methamphetamines.  It was believed that inside that case could have been needles and narcotics used in the commission of a sexual assault.

Q.    Was the – the case that you're describing, was it a –

like a locked -

A.    Yes.

Q.    - like a lock box or a small safe or some sort of thing with a bolt lock on it?  Can you describe it for us?

A.    It was like a combination, I believe.  I don't know if Ms. Gustin can see.  It's about that wide and about that thick. Kind of a rectangle shape.

Q.    Rectangle shape.

A.    What I would consider a cheap - cheap locking mechanism.

Q.    Okay.  Pursuant to the search warrant, you searched that - that locked container.

A.    Yes.

Q.    What - what did you find inside?

A.    Believed to be methamphetamine, baggies, a syringe needle.  I believe it had 35 units or approximately 35 units of a liquid that's believed to be methamphetamine in it, as well.

Q.    What do you mean by "units"?

A.    Dose units - like a measurement of milliliters or of a liquid.

Q.    And where would - where would they have kept it?

A.    In a syringe.  I'm sorry.

Q.    Okay.  So there's 35 syringe - syringes?

A.    No.  A single syringe, with a measurement on the syringe of 35, I believe.

Q. Oh, okay.

A. We call it "dose units".

Q. Oh, okay. And were you able to - well, from your training and experience, have you done any work in narcotic investigations?

A. Yes.

Q. Have you seen what you know to be methamphetamine, either in your training or experience, which you later found out to be methamphetamine?

A. Yes.

Q. And can you describe or can you tell the court whether or not what you were seeing on that day matched what you know to be methamphetamine?

A. Yes.

Q. Okay. What about it - what characteristics about it led you to believe it was methamphetamine and gave you cause to arrest him for that offense?

A. The white crystal like substance. The manner in which it was packaged. It was covertly stored. And it matched the description of what the victim in a sexual assault case said that was used on her and labeled it as methamphetamine.

Q. Did you field-test any portion of the substance itself? If you don't recall that's fine.

A. I don't recall that. Sorry.

Q. Has that - has that material been sent to the lab for

further testing, in Garland?

A.     It's my understanding it has been sent to the lab.

Q.     Did you have a chance to speak with the defendant while he was in custody?

A.     Yes, sir.

Q.     And was he made aware of his Miranda rights to counsel and not to speak to you if he chose to?

A.     Yes, sir.

Q.     Was that interview video taped?

A.     Yes, sir.

Q.     Is the -- did the defendant waive his rights?

A.     He did.

Q.     Did he waive his rights on camera?

A.     Yes, he did.

Q.     Did he waive them also in writing?

A.     Generally that's our practice, but I do not recall if it was actually in writing or not.

Q.     Okay.  But you can see it on video.

A.     Yes, sir.

Q.     Was a subsequent interview with the defendant video taped as well?

A.     Yes.

Q.     Can you describe, in general, what the content of your conversation was with the defendant?

A.     Mark, at first, said that there was no activity between

he and the victim. I believe later he acknowledged there was contact. And it was asked about the items found in his vehicle and he acknowledged that he thought that there was three grams of methamphetamine in that locked container.

Q. Did he ever describe to you what it is that he did or planned on doing with that methamphetamine?

A. He said he drove a truck and that he sold methamphetamine and made generally 5 to $600 a week selling the drugs.

Q. And he confessed that to you.

A. Yes, sir.

Q. And what charge was he arrested for, based on that statement and what you found at the scene?

A. Manufacture and delivery of a controlled substance, penalty group 1, over 4, under 200 grams.

Q. Okay. You didn't find him actually manufacturing or delivering that methamphetamine, is that correct?

A. That's correct.

Q. Okay. So this is a - is this a possession with intent to deliver?

A. Yes.

Q. Okay.

A. It's my belief and with his confession, that he is distributing for sale methamphetamine.

THE STATE: Pass the witness, Your Honor.

CROSS EXAMINATION

BY MS. GUSTIN

Q. Now, Mr. Walden, you indicated that there was a search warrant in this case, is that correct?

A. Yes, ma'am.

Q. Who secured that search warrant?

A. I believe Felicia White wrote the search warrant.

Q. Felicia White?

A. I believe she - Felicia and Warren Mitchell worked on the search warrant while we were conducting the surveillance.

Q. And did you bring a copy of that search warrant with you today?

A. I've got the probable cause for it up here.

Q. Can I see what you have as the probable cause?

A. No. This is for the sexual assault. I'm sorry.

Q. So you don't have the actual search warrant with you today.

A. Not - I think that's what that is. I think that's just the probable cause for his - this discovery hearing.

Q. So you didn't actually prepare the search warrant for the room or the vehicle, is that correct?

A. That's correct.

Q. Did you come in possession of the search warrant at any time?

A. Yes.

Q. When – how did you become in possession of that search warrant?

A. It was delivered to Motel 6 prior to the entry of the room.

Q. And when you say it was delivered to Motel 6, is that prior to or after the traffic arrest of Mr. Engle?

A. The traffic arrest was – the traffic arrest was, I believe, prior to the search warrant being obtained.

Q. And so the – the traffic violation was done on – did you say the service road of Interstate 30?

A. Yes.

Q. And so, at that time, Mr. Engle was arrested for traffic violations, is that correct?

A. That's correct.

Q. And was he taken into custody at that time?

A. Yes, he was.

Q. And he was taken into custody for what reason?

A. For traffic violations.

Q. Well, were there any –

A. I'm sorry. Go ahead.

Q. – warrants for his arrest or was it solely for the traffic violation?

A. At that time there was no warrant for his arrest.

Q. And so what specifically was the traffic violation that he was stopped for?

A. He got on the interstate and was weaving in and out of traffic, so failed to signal lane.

Q. And that's something you yourself observed.

A. Yes.

Q. And were you the person who actually initiated that traffic stop?

A. Yes.

Q. And once that traffic stop occurred, did you remain with Mr. Engle?

A. No, I did not.

Q. Who took custody of Mr. Engle?

A. Corporal Huddleston, I believe it was.

Q. Corporal who?

A. Huddleston.

Q. Huddleston.

A. Huddleston. Yes, ma'am.

Q. And at that point the car was impounded.

A. It was taken to the police station.

Q. All right. Who took the vehicle to the police station?

A. That would have been one of our on-call wreckers and I don't recall which that was.

Q. And at the time of the arrest, was there an inventory of the vehicle?

A. No. I asked that the vehicle be impounded to the station and that the officer follow the vehicle to the station.

Q. Okay. So there wasn't an inventory of the vehicle.

A. No.

Q. So between the time that Mr. Engle was arrested, there was no inventory done of the vehicle and the vehicle was taken to the police station, is that correct?

A. That's correct.

Q. And who - who was with the car from the time of the arrest until it was left at the Greenville Police Department?

A. Should have been Corporal Huddleston.

Q. And do you have personal knowledge of whether or not Investigator or Officer Huddleston stayed with the vehicle?

A. He was instructed to.

Q. But you don't have any personal knowledge of that, do you?

A. No, I do not.

Q. You don't know if there was anything added to or removed from the vehicle? Personal knowledge. You don't have that, do you? Were there any pictures taken at the time of the traffic stop?

A. Only video from the marked units.

Q. All right. So as far as you - you didn't, yourself, take any like pictures with a camera, with a phone or anything like that, of the actual contents of the vehicle?

A. Not - not during the traffic stop. No.

Q. Do you know if Investigator Huddleston did?

A.      Not to my knowledge.  Only his in-car camera.

Q.      And you left from the service road and went where?

A.      Back to Motel 6.

Q.      And at Motel 6, is that when you came into possession of the search warrant?

A.      Yes.  Shortly thereafter.

Q.      Who signed the search warrant?  Which magistrate?  Do you know?

A.      That I don't recall.  I'm sorry.

Q.      Do you know what information was - the information that was contained within the search warrant, do you know where that information came from?

A.      It came from the victim and came from information from me and Corporal Petrie.

Q.      So as far as verification on whether or not this alleged victim was someone that was truthful or not, you don't have that knowledge, do you?  You don't have personal knowledge of whether or not that person is truthful or not.

A.      I have personal knowledge that what she described, as far as the vehicle, the gentleman sitting next to you, his name, where they were staying, that was verified.  As far as the events that led up to that; it's based on the victim's statement.

Q.      So whether or not she was being truthful, that would be something certainly to be considered on whether or not the information contained in the warrant was accurate and truthful.

A.    It is.

Q.    And that was done in a very brief period of time. There was no verification of the information that she allegedly provided to the police department that day.

A.    It was a rather lengthy contact with her and she kept to the same story.

Q.    She wasn't the one that initiated the contact with the police department.  It was another person that actually caused her to come to the police station, is that correct?

A.    Yes.

Q.    Now as - specifically, the container that was in the backseat of the vehicle, that was located in the backseat of the vehicle, that was a locked container, correct?

A.    Yes.

Q.    And the search warrant didn't specifically have any mention of any locked containers, did it?

A.    I would have to go back and review the verbiage on that?

Q.    So as you sit here right now you don't know the exact contents of what you were able to search in that search warrant.

A.    I know that it was designed so that we could search for areas that could contain items used in a sexual assault.

Q.    And there wasn't anything specific with regards to a locked container within the vehicle, in the search warrant, was there?

A.    I do not recall.

Q.    That's certainly something that if you needed to get a search warrant for, you could have obtained a search warrant for, is that correct?

A.    Yes.

Q.    I believe you indicated that when you did search the container, that was something that - if I understand your testimony correctly, that was after you had interviewed my client, is that correct?

A.    No.

Q.    You searched the container prior to the interview with my client?

A.    Best I recall.  Yes.

Q.    Okay.  So you searched a locked box prior to interviewing my client.

A.    Yes.

Q.    And your testimony is, sir, that you don't recall a field test being done on the contents of that locked box.

A.    That's correct.

Q.    So isn't it true that without verification of a field test, it could be any liquid?

A.    The liquid, yes.

Q.    It's a clear liquid.

A.    That's correct.

Q.    And isn't it true that when you were first talking to

my client, Mr. Engle, you had an opportunity to observe him, is that correct?

A. When I - I'm sorry. I don't understand your question.

Q. When - when you said you interviewed my client - you talked to him, is that correct?

A. Yes.

Q. And that was in one of the interview rooms at the Greenville Police Department.

A. That's correct.

Q. And it has the capability of recording both audio and visual. It's a regular video taping room - interview room -

A. Yes.

Q. - correct?

A. Yes, ma'am.

Q. So you had an opportunity to get to sit in fairly close proximity to Mr. Engle, is that correct?

A. Yes.

Q. Those rooms are what, maybe 5 by 5?

A. Maybe 8 by 8.

Q. Pretty small.

A. Yes.

Q. You could pretty much - the table and the area that you sit in, it's certainly - if it's not arms distance away, it's not much more than that.

A. That's correct.

Q.    And would it be fair to say that my client was intoxicated or high on drugs when you talked to him that day?

A.    I don't believe him to be intoxicated - or to have been intoxicated on alcohol.  I believe it was a narcotic.  I would say that he would be jonesing, if that's understood by everybody.

Q.    And by that you mean that he was using - coming down from - how would you describe what jonesing means?  I mean, I know what I think it means.

A.    Right.  Right.  It's - if you've seen someone really nervous, they might have the same symptoms.  Eye movement was a little jerky, but certainly was able to communicate with us.

Q.    When someone is jonesing is that, in your experience, something that leads a person to be clearheaded and able to make good rational decisions?

A.    Rational decisions, sometimes not.

Q.    And at that point in time that was when you read to Mr. Engle his Miranda warnings, is that correct?

A.    It is.  I'm sorry.

Q.    Just giving all the call of the wild a chance to go past us here.  All right.  And you receive training with respect to taking custodial interrogations, don't you?

A.    Yes.

Q.    As a part of your TCLEOSE certification and so forth there's a certain amount of hours of custodial interrogation, correct?

A.     Yes.

Q.     And one of the elements or one of the things – it's kind of like on a check list that you have to do, is make sure that once you've given the Miranda warnings that the person that you're going to take a statement from knows what those rights are, correct?

A.     Yes.

Q.     And knowingly waives or gives up those rights.

A.     Yes.

Q.     And certainly if a person is intoxicated or jonesing, that would affect their ability to make a knowing or voluntary statement, wouldn't it?

A.     I would say that in some cases, yes.

Q.     And that was the case with Mr. Engle, wasn't it?

A.     No.

MS. GUSTIN:     Pass the witness.

THE STATE:     No further questions from Sergeant Walden, Your Honor.

THE COURT:     All right.  You may step down. Anything further from the State?

THE STATE:     No further witnesses, Your Honor.

THE COURT:     Anything further from the defendant?

MS. GUSTIN:     No, Your Honor.

THE COURT:     All right.  Any arguments?

THE STATE:     No, Your Honor.  Well, the evidence

provided by the witness speaks for itself on the manufacture and delivery charge. As the State said earlier we don't intend to produce any evidence in the other charge at this time. But that's no indication from the State whether or not we believe that case to be true or not. We're not going to present any evidence of it today. We believe there's been more than probable cause provided to the court to continue to detain Mr. Engle in custody for the manufacturing and delivery charge, Your Honor.

THE COURT: Ms. Gustin.

MS. GUSTIN: Your Honor, I think if the court is looking at the information provided, there was no verification the information provided was accurate. It was done within a very brief period of time. The - the probable cause that the State is trying to urge comes from a container within a container that was not part of the search warrant. I think the totality of the circumstances that the - they're - is weak if any probable cause in this case and ask that you find in that order.

THE COURT: All right. The court finds there is probable cause to detain the defendant. The court's going to take about a 10 minute recess. I have a phone conference hearing I have to do and then I'll be back to finish up.

(The hearing was concluded.)

THE STATE OF TEXAS

COUNTY OF HUNT

I, Michael Hurley, Deputy Official Court Reporter in and for the 354TH District Court of Hunt County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $ 115.50 _____ and was paid/will be paid by the ___State___ .

WITNESS MY OFFICIAL HAND this the __2__ day of September, 2013.

_____
MICHAEL HURLEY, Texas CSR 2372
Expiration Date: 12-31-13
1330 Mackie Drive
Richardson, Texas 75081
(214) 226-2547

Exhibit "C"


Orders

from

Examining Trial

Certified Copies

NO. 07259 (Sexual Assault)

| STATE OF TEXAS | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| vs. | § | 354th JUDICIAL DISTRICT |
| | § | |
| MARK ENGLE | § | HUNT COUNTY, TEXAS |

## ORDER ON EXAMINING TRIAL

On _____, the Magistrate heard matters alleged against MARK ENGLE and finds:

1.     MARK ENGLE is charged with the offense of SEXUAL ASSAULT, the degree of which is a Second Degree Felony.

2.     Probable cause does not exist to proceed further with matters against MARK ENGLE and it is therefore ordered that MARK ENGLE is discharged from custody of the county.

Signed on _____April 8, 2013_____.

_____
MAGISTRATE

DUPLICATE

NO. 07259(MAN DEL C/S < 400gm)

| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | 354th JUDICIAL DISTRICT |
| | § | |
| MARK ENGLE | § | HUNT COUNTY, TEXAS |

## ORDER ON EXAMINING TRIAL

On _____, the Magistrate heard matters alleged against MARK ENGLE and finds:

1.    MARK ENGLE is charged with the offense of **MAN DEL C/S < 400gm**.

2.    Probable cause does ~~not~~ exist to proceed further with matters against MARK ENGLE ~~and it is therefore ordered that MARK ENGLE is discharged from custody of the~~ *RBeacon* ~~county.~~

Signed on _April 8, 2013_.

_Richard A Beacon Jr_
MAGISTRATE

A CERTIFIED COPY

ATTEST
STACEY LANDRUM, DISTRICT CLERK
HUNT COUNTY, TEXAS

This is a True and Correct Copy of the original on
File in the Hunt County, District Clerk's Office

By _____ Deputy



# HUNT COUNTY

**POST OFFICE BOX 1437 – GREENVILLE, TEXAS 75403-1437**

DISTRICT CLERK
**STACEY LANDRUM**
**(903) 408-4172**

Mark Engle 1958430
899 FM 632
Kenedy, TX 78119

Dear Mr. Engle,

Per your request I have sent you both of the "ORDER ON EXAMINING TRIAL" from WRIT #07259. Unfortunately we do not have Docket Sheets in WRIT's.

Please let us know if we can be of further assistance.

Yours truly,

Stacey Landrum, District Clerk
Hunt County, Texas

By _____
Deputy

Exhibit "D"


DNA

Report



# TEXAS DEPARTMENT OF PUBLIC SAFETY

**CRIME LABORATORY**
402 W IH 30
Garland, TX 75043-5902
Voice 214-861-2190  Fax 214-861-2194
GarlandCrimeLab@dps.texas.gov



STEVEN C. MCCRAW
DIRECTOR
DAVID G. BAKER
CHERYL MacBRIDE
DEPUTY DIRECTORS

COMMISSION .
A. CYNTHIA LEON, CHAIR
CARIN MARCY BARTH
ADA BROWN
ALLAN POLUNSKY
RANDY WATSON

## Forensic Biology Laboratory Report

Issue Date:  August 29, 2013

Felicia White
Greenville Police Department
PO Box 1049
Greenville, TX 75403

**Laboratory #** GAR-1212-13765
**Agency #** 201226498
**County** Hunt
**Offense Date** 12/07/2012

**Suspect(s):**  ENGLE, Mark Eugene (DOB 08/22/68) TX DL 11662971

**Victim(s):**  DOE, Jane (DOB 11/11/91)

**Submission Information:**

01 - Sexual Assault Kit on December 11, 2012 by Gray, Marcus VIA In Person
02 - white paper sack on December 11, 2012 by Gray, Marcus VIA In Person

**Requested Analysis:**  Screen for biological evidence.

**Evidence Description, Results of Analysis and Interpretation:**

01 : Properly Sealed Sexual Assault Kit from Jane Doe

**01-01 : Known blood specimen from victim in envelope - Purple top tube**
No analysis. A portion of the item was collected to be used as a reference.

**01-02 : Known saliva specimen from victim in envelope**
No analysis. Item was collected to be used as a reference.

**01-03 : Vaginal swabs and smear slide from victim in envelope**
A presumptive test for the presence of semen was negative on the vaginal swabs. Spermatozoa, semen specific constituents, were detected on the vaginal smear slide.

**01-04 : Anal swabs and smear slide from victim in envelope**
A presumptive test for the presence of semen was negative on the anal swabs. Spermatozoa, semen specific constituents, were detected on the anal smear slide.

**01-05 : Oral swabs and smear slide from victim in envelope**
A presumptive test for the presence of semen was negative on the oral swabs. No spermatozoa, semen specific constituents, were detected on the oral smear slide.

**01-06 : Fingernail collection from victim in envelope**
No analysis.

**01-07 : Debris swabs from victim's breast in envelope**
A presumptive test for the presence of semen was negative.

**01-08 : Urine specimen from victim - Red top tubes (3)**
No analysis.

**01-09 : Underwear from victim in sack**
Acid phosphatase, a nonspecific constituent of semen, was detected on stains. Trace evidence was collected. The collected trace evidence has been packaged with the evidence. No further analysis was conducted at this time.

*ACCREDITED BY THE AMERICAN SOCIETY OF CRIME LABORATORY DIRECTORS - LAB ACCREDITATION BOARD*

TxDPS 07.16.13

COURTESY · SERVICE · PROTECTION

## 02 : Properly Sealed white paper sack

No analysis on shirt (according to submission form).

### Investigative Leads:

DNA analysis may be performed on selected stains from this case. A separate report will be issued upon completion of this analysis.

For comparison purposes, please submit a known specimen from the suspect when apprehended. Contact the laboratory for instructions on the proper collection method of additional evidence.

If future analysis of the collected trace evidence is necessary, please contact the Trace Section.

### Disposition:

A portion of the victim's known blood specimen, saliva specimen, vaginal and anal swabs, and stains from the victim's underwear will be retained frozen to preserve the biological constituents.

A portion of the blood specimen and the urine specimen from the victim have been forwarded to the Toxicology Section of the Austin DPS Laboratory. A separate report will be issued upon completion of the analysis.

We are unable to retain the remainder of the evidence. Please make arrangements to pick up this evidence at your earliest convenience.

This report has been electronically prepared and approved by:

Amelia Dowhower
Forensic Scientist
Texas DPS Garland Crime Laboratory

# TEXAS DEPARTMENT OF PUBLIC SAFETY

CRIME LABORATORY
402 W IH 30
Garland, TX 75043-5902
Voice 214-861-2190  Fax 214-861-2194
GarlandCrimeLab@dps.texas.gov



STEVEN C. MCCRAW
DIRECTOR
DAVID G. BAKER
CHERYL MacBRIDE
DEPUTY DIRECTORS

COMMISSION
A. CYNTHIA LEON, CHAIR
CARIN MARCY BARTH
RANDY WATSON

## DNA Laboratory Report

Issue Date:  December 04, 2013

Felicia White
Greenville Police Department
PO Box 1049
Greenville, TX 75403

**Laboratory #** GAR-1212-13765
**Agency #** 201226498
**County** Hunt
**Offense Date** 12/07/2012

**Suspect(s):**   ENGLE, MARK EUGENE (DOB 08/22/1968) TX DL 11662971

**Victim(s):**   DOE, JANE (DOB 11/11/1991)

**Requested Analysis:** Perform forensic DNA analysis.

Please refer to the previous Forensic Biology Laboratory Report dated August 29, 2013.

## Evidence Description, Results of Analysis and Interpretation:

Portions of the items were extracted by a method which yields DNA.

When necessary, the items were extracted by a two step method which first recovers DNA from non-sperm cells (epithelial cell fraction) and then recovers DNA from sperm cells (sperm cell fraction).

The DNA isolated was analyzed using STR (Short Tandem Repeat) PCR (Polymerase Chain Reaction) analysis. The following loci were examined: D8S1179, D21S11, D7S820, CSF1PO, D3S1358, TH01, D13S317, D16S539, D2S1338, D19S433, vWA, TPOX, D18S51, Amelogenin, D5S818, and FGA.

### 01-01-AA : Portion of known blood specimen from victim

The DNA profile was used for comparison purposes.

### 01-04-AA : Anal swabs from victim in swab box

No DNA profile was obtained from the sperm cell fraction of the anal swabs.

The partial DNA profile from the epithelial cell fraction of the anal swabs is consistent with the DNA profile of Jane Doe.

### 01-09-AB : Stain from victim's underwear

The DNA profile from the sperm cell fraction of stain AB from the victim's underwear is consistent with a mixture from an unknown male and an unknown individual. Due to the low level of data present above our analysis threshold, no comparisons will be made to the unknown indvidual.

The DNA profile from the epithelial cell fraction of stain AB from the victim's underwear is consistent with the DNA profile of Jane Doe.

## Investigative Leads and Requirements for Further Analysis:

The male DNA profile from the sperm cell fraction of stain AB from the victim's underwear has been entered into the Combined DNA Index System (CODIS).

Exhibit "E"


Case History

of

Jane Doe

# Case History

(Back)

Case Number  380-83053-2011
Date Filed:  12/13/2011
Case Type:  CR - Filed by Indictment
Status:  Adjudication Pending
Style:  STATE of TEXAS Vs. Shalyn Larie Witcher
JudicialOfficer: District Judge, 380th in 380th District Court

## Parties

| Type | Name | DOB | Address | A |
|------|------|-----|---------|---|
| Defendant | Witcher, Shalyn Larie | 11/11/1991 | 880 E Winningkoff RD , Lucas, TX 75002 | S N |
| State | STATE of TEXAS | | District Attorney's Office, 2100 Bloomdale, Suite 2004, McKinney, TX 75071 | |

## Charges

| Offense Code | Description | Offense Date | Degree | Level | Statute | Fine Amount | Arresting Agency | Arrest Date |
|--------------|-------------|--------------|--------|-------|---------|-------------|-----------------|-------------|
| 23990143 | THEFT OF MATERIAL ALUM/BRNZE /COPPER/BRASS <$20K | 09/12/2011 | 110 | State Jail Felony | 31.03(e) (4)(F) | | Collin County Sheriff's Office | 12/31/20 |

## Disposition

| Date | Disposition |
|------|-------------|
| 04/04/2012 | Deferred Adjudication |

## Case Events

| Date | Event Type | Comments | Cancelled Reason | Tii |
|------|-----------|----------|------------------|-----|
| 11/29/2011 | Pre-Indictment Warrant Fees | | | |
| 11/30/2011 | Attorney Appointed As Counsel | Stephen Miller | | |
| 12/09/2011 | Approving Bond by Sheriff | | | |

| Date | Event | Details | Status | |
|------|-------|---------|--------|---|
| 12/13/2011 | Case Filed by Indictment (OCA) | | | |
| 12/19/2011 | Court Decree | Bond Set at $5,000.00 | | |
| 01/20/2012 | First Appearance | | | 9 |
| 03/02/2012 | Announcement | | | 9 |
| 04/04/2012 | Plea - Agreed | | Cancelled: Case Disposed | 9 |
| 04/04/2012 | General Docket Entry | Def. pleads guilty - 2 years Def. Adj. | | |
| 04/04/2012 | Defendant's Plea Agreement Packet | | | |
| 04/04/2012 | Plea | | | |
| 04/04/2012 | Disposition | | | |
| 04/04/2012 | DC-Probation (CSCD) | | | |
| 12/03/2012 | Motion Adjudicate Probation Filed-OCA - Reopen | No Bond Set/Sent to SO 12-5-12 | | |
| 12/03/2012 | Warrant Issued | | | |
| 01/03/2013 | Warrant Received Executed | | | |
| 01/03/2013 | Precept Executed | | | |
| 01/16/2013 | Appearance with Attorney | | | 9 |
| 01/17/2013 | Announcement | | | 9 |
| 02/01/2013 | Plea of True | | Jail Plea | 9 |

Financial Summary

Exhibit "F"


Correspondance

from

Judge Beacom

**JULIE VROOMAN**
COURT REPORTER
903/408-4108



**DONNA MEEKS**
COURT ADMINISTRATOR
903/408-4194

# RICHARD A. BEACOM, JR.
DISTRICT JUDGE
354TH JUDICIAL DISTRICT OF TEXAS

HUNT AND RAINS COUNTY
P.O. BOX 1097
GREENVILLE, TEXAS 75403-1097
(903) 408-4194

August 7, 2014

Assistant District Attorney
Steve Lilley
4th floor
Hunt County Courthouse
Greenville, Texas  75401

Katherine Ferguson
P. O. Box 21
Greenville, Texas  75401

Re:  Cause No. 29,110-The State of Texas Vs. Mark Eugene Engle

Dear Counsel:

Considering the totality of circumstances, the Court finds there was probable cause within the four corners of the Application for Search Warrant, for a warrant to issue for search of evidence of a sexual assault. Therefore the Motion to Suppress is denied.

The Court is setting this for jury trial September 29, 2014, with pre-trial September 9, 2014.

Please present an order.

Sincerely,

Richard A. Beacom, Jr.
Judge, 354th Judicial District Court

Exhibit "G"


Order

on

Motion to Suppress

CAUSE NO. 29,110

| THE STATE OF TEXAS | §  | IN THE DISTRICT COURT |
|---|---|---|
|  | § |  |
| VS. | § | OF HUNT COUNTY, TEXAS |
|  | § |  |
| MARK EUGENE ENGLE | § | 354TH JUDICIAL DISTRICT |

## ORDER ON MOTION TO SUPPRESS

THE COURT, after receiving evidence and hearing arguments of counsel, <u>DENIES</u> the Defendant's Motion to Suppress.

Signed this ____//____ day of September, 2014.

ORIGINAL SIGNED BY
RICHARD A. BEACOM JR., JUDGE

_____
Richard A. Beacom, Jr.
Judge, 354th District Court

Exhibit "H"


Dismissal

of

Controlling Case

OFFICE OF

# NOBLE D. WALKER, JR.

## DISTRICT ATTORNEY

Hunt County Courthouse, 4th Floor
P. O. Box 441
Greenville, Texas 75403-0441
(903) 408-4180 - Telephone
(903) 408-4296 - Facsimile

## NO ACTION DISPOSITION REPORT

Date: <u>OCTOBER 6, 2014</u>
DISTRICT ATTORNEY FILE NUMBER: <u>1304081</u>
DEFENDANT: <u>MARK EUGENE ENGLE</u>
DATE OF OFFENSE: <u>12/07/2012</u>
OFFENSE: <u>SEXUAL ASSAULT</u>
DATE OFFENSE REJECTED: <u>OCTOBER 6, 2014</u>
<u>YES</u>    ARRESTED
— OFFENSE REPORT ONLY
AGENCY OFFENSE CASE NUMBER:

This is to inform you, the above matter (s) has/have been placed in our closed files with no further action to be taken, for the following reason(s).

— Insufficient evidence to file the case.
— Complainant signed non-prosecution affidavit
— Unable to obtain requested additional paperwork
— Case was not filed before Statute of Limitations ran
— Unable to show sufficient elements of offense under penal code
— Complainant has refused to sign a complaint and/or statement
— Co-Defendant convicted, Insufficient evidence this Defendant
— Defendant has completed pretrial Diversion
<u>XX</u>    Other: <u>VICTIM REFUSED TO COOPERATE; DEFENDANT WAS SENTENCED TO</u> <u>LIFE IN PRISON IN CAUSE NO. 29,110</u>

Any evidence seized, other than contraband, criminal instruments or stolen property, should be released unless said evidence is being held as part of another criminal case or criminal investigation.

Respectfully submitted,

Hunt County District Attorney's Office

Cindy Meyer:         ☒ Box  Hunt County Jail:  ☒ Fax
Johnnie Waits:       ☐       Defense Attorney:  <u>K. FERGUSON</u>    ☒ Box
HCSO Warrants:    ☒ Fax  Arresting Agency:  <u>GPD</u>  ☒ Fax
Probation:              ☐
DA File Copy :       ☒       Parole- gina X Fax

Exhibit "I"


Proof

of

Mailing

## Exhibit "A" Attachment

(1) Green Card Certified with Certified Receipt.

---

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Davidson_ ☐ Agent ☐ Addressee<br>B. Received by (*Printed Name*) _Jean Davis_ C. Date of Delivery |
| 1. Article Addressed to:<br><br>Donna Meeks<br>Court Administrator<br>354th District Court<br>Hunt County Courthouse<br>Greenville, TX 75401 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>*(postmark)* GREENVILLE TX CL #1 APR 22 2015 75401<br><br>3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☒ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*) ☐ Yes |
| 2. Article Number<br>(*Transfer from service label*) | 7011 0110 0001 4365 7339 |

PS Form 3811, February 2004    Domestic Return Receipt.    102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

7011 0110 0001 4365 7339

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee<br>(Endorsement Required) | Postmark Here |
| Restricted Delivery Fee<br>(Endorsement Required) | |
| Total Postage & Fees | $ 10.29 |

Sent To
Donna Meeks 354th District Court
Street, Apt. No.; or PO Box No. Hunt County Courthouse
City, State, ZIP+4 Greenville, TX 75401

PS Form 3800, August 2006    See Reverse for Instructions

(7)

Exhibit "J"


Motion for

Order to Show Cause

Sworn Copy

Cause No. 29110

Mark Eugene Engle                    §                    354th District Court

v.                                   §                    Hunt County

State of Texas                       §                    Greenville, Texas


Motion for Order to Show Cause


Now comes Defendant Mark Eugene Engle seeking this Court to issue an Order to Show

Cause to Assistant District Attorney Steve Lilley in his official capacity to answer

the following questions:

(1.) Did the District Attorney's office, namely Steve Lilley, withhold exculpatory

evidence by not producing the facially invalid search warrant prior to asking

the defendant to plead guilty.

(2) Does the District Attorney's office, namely Steve Lilley have any reasoning to

not Dismiss with prejudice, the case against Mr.Engle for a 4th Amendment

Violation of the particularity clause for a facially invalid search warrant?


It is a simple case of Steve Lilley acting under the disguise of propriety, while he

argues the irrelevant, trying to look brillant, in the eyes of the officers he is enabling

to commit wrongful acts, and promoting grave miscarriages of justice by those who are

suppose to protect us.

(1)

## Prayer

The defendant prays this court will Grant this order and do finding of fact and conclusion of law, to correct the errors of it's way.

_Mark Eugene Engle_
Mark Eugene Engle Pro-Se

## Certificate of Service

This is to certify that a true and correct copy of the above and foregoing document was served on the 20th day of April 2015, and delivered by U.S. Postal Service to Donna M. Meeks, Court Administrator, 354th Judicial Court, Hunt County Greenville, Texas 75401.

_Mark Eugene Engle_
Mark Eugene Engle Pro-Se.

(2)

Cause No. 29110

Mark Eugene Engle                      §          354th District Court

   v.                   §          Hunt, County

State of Texas                         §          Greenville, Texas

§

## Order to Show Cause

On the _____ day of _____ 2015 came on to be considered Maek Eugene Engle's request for Order to Show Cause, and said motion is hereby:

[] Granted


  or


[] Denied


_____
Judge Presiding

(3)

Exhibit "K"


Motion

to

Dismiss with Prejudice

Sworn Copy

Cause No. 29110

Mark Eugene Engle                          §          354th District Court

         v.                                §          Hunt County

State of Texas                             §          Greenville, Texas


### Motion to Dismiss with Prejudice


Now comes Mark Eugene Engle, defendant in the above styled and numbered cause, and moves this Court to Dismiss this cause with prejudice. That no further allegations for prosecution be brought forth and place this action in the District Attorney File Number 1304081.

In support of the Defendant would show by way of Order to Show Cause that the District Attorney's office- namely Steve LIlley withheld exculpatory evidence that now constitutes an Actual Innocence Claim.

"A Facially Invalid Search Warrant that can not be cured by an incorporated Affadavit. Especially when the Affidavit was sealed." GROH v Ramirez, 540 U.S. 551 (2004).


### Article 32.02 Dismissal By State's Attorney


The attorney representing the State may, by permission of the Court, dismiss a criminal action at any time upon filing a written statement with the papers in the case setting out his reasons for such dismissal, which shall be incorpated in the judgement of dismissal. No case shall be dismissed without the counsel of the presiding judge.


I.

Statutory interpation requires Court to seek to effectuate the collective intent or purpose of the legislators who enacted the legislation, by focusing it's attention on the

(1)

staute's text and attemping to discern the fair , objective meaning of that text at the time of it's enactment.

If a statute is clear and unambiguous the Legislature must be understood to mean what it has expressed, and it is not for the Courts to add or subtract from such a statute." Fryer v. State, 993 S.W.2d.385 (Tex.App.Ft.Worth 1999).

Code of Criminal Procedure's express statutory provision and clear unambiguous language contained in Article 16.17, is arguably a critical stage for sixth and fourteen teenth Amaendment analysis.

Statute providing that the Judge make and enter orders within 48 hours after the Examining Trial has been had and failure to do so operates as a finding of No Probable Cause and the accused shall be discharged is very concise. The Court was under the veil of a Writ of Habeas Corpus at the time of this hearing.

Once this statute has been ignored it creates a storm of wrongful acts against the accused. Nothing the Court can do will stop the storm under the Statute of Due Course of Law.

To support the Due Course of Law the accused was to be dischargeed. Operation of Law is by the Due Course of Law. No Probable Cause is enough to stop the Court from even entertaining a bond hearing. Let alone a Speedy Trial Complaint in a motion to dismiss.

The Court was clearly on a fishing expedition to gain a conviction. This Honorable Court can review the procedding had under Writ 07259.

(2)

A complete miscarriage of justice was had when the Court continued to seek a conviction by way of a facially invalid search warrant. The particularity requirement states the warrant should describe "as near as may be" the person's or things to be seized. This facially invalid Search Warrant does not even allege a crime-let alone a criminal.

In Groh v. Ramirez, 540 U.S. 551 (2004), The Supreme Court, Justice Stevens, held that;

(1) Search Warrant that utterly failed to describe the persons or things to be seized was invalid on it's face not withstanding that requisite particularized description was provided in search warrant application;

(2) residental search that was conducted pursuant to this facially invalid warrant could not be regarded as "reasonable" though items to be seized exercised restraint in limiting scope of search to that indicted in application; and

(3) Bureau of Alchol, Tabacco abd Firearms (BATF) agents who had prepared and executed warrant were not entitled to qualified immunuty from liability."

Search warrant that utterly failed to describe the persons or things to be seized was invalid on it's face, not withstanding that requisite particularized description was provided in search warrant application, where the description was not incorporated by reference in search warrant itself, and where application, having been sealed, did not accompany warrant. U.S.C.A Const.Amend.4.

Thus "absent exigent circumstances a warrantless entry to search for weapons or contraband is unconstitutional even when a felony has been committed and there is probable Cause to believe that incriminating evidence will be found within." at 587-588, 100 S.Ct.

1371 (footnote omitted).

### III.

Now look at the search warrant signed by Ex-Judge Tittle labeled EXhibit "A", It is a clear case of 4th Amendment Violation. On top of the fact the District Attorney's office namely, Steve Lilley has a duty to insure everything is on the level in all proceedings had under his supervision in the Court room.

Wherefore, Premises Considered, Defendant prays that this Honorable Court consider the totality of the circumstances, along with the history of the case which lacks Due Course of Law, and know that but for a facially invalid search warrant a conviction would never have been obtained. Defendant further prays that this Court will Dismiss this case with Prejudice as it is the only relief that is proper.

Respectfully Submitted,

Mark Eugene Engle

Mark Eugene Engle
Pro-Se

### Certificate of Service

This is to certify that a true and correct copy of the above and foregoing document was served on the 20th day of April 2015 and delivered by U.S. Postal Service to Donna Meeks Court Administrator, 354th Judicial District Court, Hunt County, Greenville, Texas.

Mark Eugene Engle

Mark Eugene Engle    Pro-Se

(4)

Cause No. 29110

Mark Eugene Engle                                    §                        354th District Court

v.                                                   §                        Hunt County

State of Texas                                       §                        Greenville, Texas


Order

On the ____ day of _____ 2015 came on to be considered Mark Eugene Engle's

Motion to Dismiss with Prejudice.

Said Motion is hereby;


[] Granted


Or


[] Denied


_____
Judge Presiding

(5)

Exhibit "L"


Unsworn

Declaration

## Unsworn Declaration

I swear under penalty of perjury that everything in the foregoing documents are true an correct copies to the best of my knowledge and ability.

Sincerely,

*Mark Eugene Engle*

Mark Eugene Engle

Connally Unit

899 F.M. 632

Kenedy, Tx 78119

June 30, 2015